# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

ERICA TSACOYEANES              :      3:13CV01800(VAB)
*Plaintiff*             :
                              :
v.                        :
                              :
                              :
UNIVERSITY OF CONN., ET AL      :
*Defendants*           :      APRIL 30, 2015

## MEMORANDUM OF LAW IN SUPPORT OF MOTION
## FOR PROTECTIVE ORDER AND TO QUASH SUBPOENA

The defendants, the University of Connecticut Health Center and University of Connecticut School of Medicine,[1] respectfully move to quash a subpoena by plaintiff as both testimony and documents sought are protected by the Family Education Rights and Privacy Act, 20 U.S.C. § 1232g ("FERPA"). Defendants note that plaintiff's subpoena seeks the records of and testimony regarding at least one other student. That student has been notified as set forth below, and has objected to the release of his records. In addition, plaintiff's Production Requests seek the identity and records related to another student or students who complained about plaintiff's conduct while she was suspended, which complaint lead to an investigation resulting in plaintiff's dismissal. In the alternative, if this Honorable Court is inclined to order production of other student(s)' educational records and/or information and/or testimony about any student, the defendants respectfully move this Court that such production of records and testimony be conducted in stages as set forth below and in any event be safeguarded via the attached proposed Protective Order.

---

[1]     Plaintiff has named these defendants as separate entities, but they are the same. The name of the defendant is the University of Connecticut School of Medicine. That is the name in the Proposed Order.

The parties have conferred in good faith about this issue but have been unable to come to a manner of proceeding that is agreeable to both parties.

## I.     PROCEDURAL HISTORY

The plaintiff in this action is a former medical student at the University of Connecticut School of Medicine.  The School first suspended and then dismissed plaintiff for various acts of misconduct.  Plaintiff, a United States citizen, has sued alleging national origin discrimination by virtue of her birthplace, which is Columbia.[2]  Defendants have filed an Answer and Affirmative Defenses denying any and all discrimination and alleging that all actions taken regarding plaintiff were taken for good cause based upon her conduct.

A primary act of misconduct by the plaintiff was submission of a form known as a SCO ("student clinical observation") which was to be completed during one of a student's "rotations" by an attending or resident physician, but which the plaintiff herself had filled out and submitted to school officials as if it had been completed by a doctor.  Plaintiff makes allegations in her complaint that another student had engaged in similar misconduct, as set forth below.   Plaintiff's First Substituted  Complaint alleges in part:

> 31.     A Caucasian student, who had committed more serious violations than the plaintiff, was not suspended by the Medical school, but was allowed to continue his course of studies, and to graduate with his class.
> 32.     The Caucasian student was in the same graduating class as the plaintiff.
> 33.     During one of his required rotations, at approximately the same time that the plaintiff had submitted the unsigned SCO [one of plaintiff's transgressions leading to suspension], the Caucasian student submitted three SCO's containing the purported signatures from his supervising physician.
> 34.     When the SCO's were reviewed by the lead doctor of this particular medical rotation, it was discovered that the Caucasian student had forged the physician's signatures to the SCO's.
> 35.     The lead doctor, acting with due diligence, approached the physician, who had supposedly signed the Caucasian student's SCO's and inquired about the genuineness of the signatures.

---

[2]      On information and belief, plaintiff was adopted by U.S. citizens when weeks old.

36.     The physician informed the lead doctor that he had not signed the SCO's confirming the lead doctor's determination that the SCO's were forged by the Caucasian student.

37.     The lead doctor informed the decision making authorities of the Medical School who were responsible for student discipline, the same individuals who had expelled the plaintiff.

38.     The decision making authorities for the Medical [School], who were responsible for student discipline, allowed the Caucasian student to complete his course of studies, and to graduate with his class.

39.     The punishment imposed by the Medical school on the plaintiff was unfair and discriminated on the basis of the plaintiff's national origin.

40.     The punishment imposed by the Medical School on the plaintiff far exceeded the punishment imposed by the Medical School on the plaintiff's Caucasian classmate.

Document 19, First Substituted Complaint. The defendants deny that any other student forged any signatures or engaged in the conduct described by plaintiff.

Plaintiff noticed the depositions of two persons in the employ of the defendants, Drs. Catherine Lewis and Howard Tennen, then subpoenaed them. In communications between the undersigned counsel and counsel for the plaintiff, plaintiff's counsel has indicated that he intends to ask questions of these deponents about other students in the depositions, and there is concern that responding to plaintiff's discovery requests and providing deposition testimony will yield the identity of students which is prohibited by FERPA. There is further concern on the part of the deponents that their testimony will run afoul of FERPA.

A separate series of acts by plaintiff, those leading to her dismissal while on suspension, had to do with how plaintiff handled her duties regarding a student-run volunteer clinic known as "South Park" while suspended and how in turn she responded to complaints about her involvement with the clinic. Plaintiff's complaint alleges that the School of Medicine "manufactured a spurious complaint against the plaintiff" then explicitly acknowledges that there was indeed a complaint by a fellow student, alleging: "Based on the complaint of a single student member of the South Park Clinic, the defendant dismissed the plaintiff from the Medical School." Compl. ¶ ¶ 27-28.

Plaintiff's subpoenas for the depositions of Drs. Lewis and Tennen seek both their testimony and the following items, which were also sought in the Production Request. The subpoena, served on the undersigned counsel by agreement, is attached. The subpoena seeks:

3

1. [C]opies of all records, written or electronic, which relate in any manner to the allegations that student(s) may have falsified, and/or misrepresented the contents of student clinical observations ("SCOs") from January 1, 2010 to the present. The identifying information regarding student(s) may be redacted, identifying each student as #1, #2, etc. is sufficient.

2. [C]opies of all records, written or electronic, which relate in any manner to discipline imposed on any student(s), from January 1, 2010, to the present, for falsifying and/or misrepresenting the contents of student clinical observations ("SCOs"). The identifying information regarding student(s) may be redacted, identifying each student as #1, #2, etc. is sufficient.

See attached subpoena, Exhibit A.

The defendants acknowledge, with regard to the alleged comparator student, that

plaintiff is not ostensibly looking for the name of the other student to be provided.

Defendants are concerned, however, that further information regarding this alleged

comparator could tend to identify the student. In her deposition, plaintiff testified as follows

regarding a male student attending the School of Medicine at the same time she was who

she claims engaged in similar misconduct to her own, demonstrating that she knows what

the student looks like and other facts about him:

Q:     So, paragraph 31 [of the complaint] refers to the Caucasian student, and that's the student whose name you don't know?

A:     Correct.

Q:     And that's the one Dr. Lewis told you about?

A:     Yes.

Q:     Did you ever see him by sight? Did you ever have any idea who she was talking about, if he was in your same graduating class?

A:     I had an idea of who he was, but not—but not officially. Like, nobody had given me his name.

Q:     Where did you get the idea?

4

> A:     I mean, the math of it, the timing of it, you know, it was a student on her rotation at that point, and I knew who was on the next rotation and I knew who was working under her part of the rotation, so...
>
> Q:     So who do you think it is?
>
> A:     A Caucasian male. I'm not remembering his name. I know his stature and I know what he looks like, but I do not—I don't know his name.

Deposition Transcript Jan. 29, 2015, Exhibit B, pp. 173-174, attached. [3],[4]

In addition, plaintiff's Interrogatories ask: "State whether any of the defendants investigated any allegations and/or complaints that student(s), other than plaintiff, may have falsified, and/or misrepresented the contents of...SCOs at any time between January 1, 2010 and the present. If [yes], state: a. Without identifying the students, the year in which the complaint or complaints were received; b. Whether the complaints resulted in a determination by any of the defendants that the student(s) had committed a wrongdoing; c. The discipline, if any, that was imposed on the student(s); d. The race of the student(s)." See attached, Interrogatories Nos. 8, 9. Also, plaintiff *directly* seeks in Interrogatories the name of the student who complained about plaintiff's conduct with regard to South Park Clinic. Interrogatory No. 9, attached as Exhibit C. In addition to these Interrogatories, plaintiff makes the following Production Request:

> 9.      Produce copies of all records, written or electronic, which relate in any manner, to any complaints received by any of the defendants concerning plaintiff's participation in a student run clinic, South Park, between January 1, 2013 and the present date.

See attached Production Requests, Exhibit D.

There was a complaint about plaintiff by a fellow student or students, and plaintiff asks directly in Interrogatories for the identity of whatever student was involved in that complaint,

---

[3]     By agreement of the parties, certain portions of the plaintiff's deposition that do contain the names of other students for any reason are designated as confidential.  Dep. Tr. P. 52, redacted, attached.

[4]     Plaintiff also testified that she has recently spoken with at least one other former classmate.

and this Production Request seeks education records about that complaint with no limitation as to
any indication of the student's identity, with no mention of redaction. The identity of any
involved student has no relevance whatsoever to the ultimate issues in this matter. Once the
complaint was received, it was acted upon by school officials. The identity of this student is
protected by FERPA, and it has even less relevance than the identity of a comparator student.
As no subpoena was issued except as to documents or testimony regarding the alleged
comparator, the alleged comparator student is the only student who the undersigned counsel has
notified about plaintiff's discovery.

Although the defendants dispute plaintiff's claims regarding the conduct of the alleged
comparator, the undersigned counsel on behalf of defendants has identified which student
plaintiff is making allegations about as a comparator who allegedly engaged in misconduct
related to his SCO obligations. After the subpoena, and pursuant to FERPA, the undersigned
counsel provided notice to the other student in the form of a letter. The notification letter was
modified from one used in a case in another District Court matter, *Ke v. Drexel University*, 2014
WL 1100179, (E.D.Pa. March 20, 2014), 2:11cv6708(JHS), attached, and see Document No. 332
therein. The letter in *Ke v. Drexel* had been approved by that Court. *Id.* at *3[5]. The letter was
emailed to the other student, now a resident, with the email stating, "[P]lease acknowledge
receipt of the attached letter at your first convenience. I am sorry I do not have any address other
than your email address." See attached redacted email, Exhibit E. The letter identifies the
undersigned counsel as well as the action at hand and the discovery plaintiff seeks via subpoena.
See attached redacted letter, Exhibit F. The letter notes that the defendants have not identified
the recipient to the plaintiff, and have indicated they will object to producing records identifying

---

[5] The Court in *Ke v. Drexel* indicated that the letter comported with § 1232g(b)(2)(A).

6

plaintiff based on "the privacy rights recognized by the Family Education and Privacy Rights

Act, 20 U.S.C. § 1232g, among other objections." *Id.*  The letter further states:

> Under the law, the Court can order an educational institution to provide the parties to a lawsuit with copies of educational records of a student; however the Court will consider the privacy interests of the student and whether the student whose records are requested objects to the records being produced.

*Id.*

The letter provided a form for the student to indicate either consent or objection to the

release of his educational records and, essentially, his identity.  The student indicated

immediately via email that he objected, and then filled out the form as well.  See attached

redacted form, Exhibit G. [6]

In addition to seeking information related to the "comparator" student, plaintiff seeks the

following information related to *other* student(s):

> Production Request No. 9:  Produce copies of all records, written or electronic, which relate in any manner to any complaints received by any of the defendants concerning plaintiff's participation in a student organized health clinic, South Park Clinic, between January 1, 2013 and the present date.

See attached Production Requests.  As plaintiff alleges in her complaint that it was a student who

complained about her conduct vis-à-vis South Park Clinic (see paragraph 28 Substituted

Complaint), plaintiff is seeking records related to other students, including their identity.  The

identity of the complaining student(s) has virtually no relevance or probative value to this case,

as once the complaint was received, school officials made further investigation into the plaintiff,

---

[6]     Defendants added to the letter approved in *Ke v. Drexel* that the student could file an objection through himself or an attorney if he wished to do so.  Legal research conducted since the letter was sent indicates that at least one court denied an objecting student's intervenor status, though it noted their objections. *See Whittaker v. Morgan State University,* 842 F. Supp.2d 845 (D. Md. 2012).  The student in this case does not appear to have taken steps beyond indicating his objection to the undersigned counsel.

and then decided, with a great amount of due process and grave consideration, to dismiss the

plaintiff from the School of Medicine.

## II.    APPLICABLE LAW

Federal Rule of Civil Procedure 26(c) states:

> A party or a person from whom discovery is sought may move for a protective
> order... The Court may, for good cause, issue an order to protect a party *or person* from
> annoyance, embarrassment, oppression, or undue burden and expense.

(emphasis added).  Rule 26 provides a Court with a variety of methods to achieve this goal,

including forbidding the discovery, specifying the terms of discovery, limiting certain areas of

discovery, sealing depositions and other discretionary acts.  Rule 26(c)(1).

The Family Education and Privacy Rights Act governs the release of education records,

jeopardizing the federal funding of institutions that run afoul of the law, stating, in pertinent part:

(1) No funds shall be made available under any applicable program to any educational
agency or institution which has a policy or practice of permitting the release of
education records (or personally identifiable information contained therein other than
directory information...) of students without the written consent of their parents to
any individual, agency, or organization, other than to the following...

(2) No funds shall be made available under any applicable program to any educational
agency or institution which has a policy or practice of releasing, or providing access
to, any personally identifiable information in education records other than directory
information, or as permitted under paragraph (1) of this subsection, unless—

(A) There is written consent.... Specifying the records to be released, the reasons
for such release, and to whom and with a copy of the records to be released...,
or

(B) Except as provided in paragraph (1)(J), such information is furnished in
compliance with judicial order, or pursuant to any lawfully issued subpoena.

20 U.S.C. § 1232g(b)(1), (b)(2)(A) and (B).

Education records are defined broadly as records maintained by the institution which

"contain information directly related to a student." 20 U.S.C. § 1232g(a)(4)(A)(i).  The Code of

Federal Regulations defines "personally identifiable information" as including, but not being

limited to the student's name, address, and personal identifiers, such as social security and other

identifying numbers, place of birth and mother's maiden name. 34 C. F. R. § 99.3. In addition,

personally identifiable information is defined to include:

> (f)     other information that, alone or on combination, is linked or linkable to a specific
> student that would allow a reasonable person in the school community, who does not
> have personal knowledge of the relevant circumstances, to identify the student with
> reasonable certainty; or
>
> (g)     information requested by a person who the educational agency or institution
> reasonably believes knows the identity of the student to whom the educational record
> relates.

*Id.*

In *Ke v. Drexel* a former medical student alleging discriminatory dismissal sought records

of a large number of other students. The ruling by the Eastern District of Pennsylvania noted as

follows:

> FERPA applies to all educational institutions… that receive funds under federal
> programs administered by the US Commissioner of Education. FERPA establishes
> minimum standards for the protection of a student's privacy and other rights, and
> enforces such standards by authorizing the denial of funds to educational institutions …
> that fail to meet these prerequisites. 20 U.S.C. § 1232g.
>
> …[T]he provisions of FERPA that are relevant to the instant case are found in 20
> U.S.C. § 1232g(b), which pertain to the release of educational records to third-parties.
> Section 1232g(b)(1) prevents the unrestricted release of a student's education records or
> any "personally identifiable information" contained in such records to unauthorized
> individuals or organizations without… consent…. *See Mattie v. Johnson,* 74 F.R.D. 498,
> 501 (N.D.Miss. 1976). Education records are those records or documents maintained by
> the institution which "contain information directly related to a student." 20 U.S.C. §
> 1232g(A)(4)(A)(i).

*Id.*

"The purpose of FERPA is to 'assure access to… education records [for the subject of the

records] and to protect such individuals' right to privacy by limiting the transferability (and

disclosure) of their records without their consent.'" *Ragusa v. Malverne Union Free School Dist.,* 549 F. Supp.2d 288, 291 (E.D.N.Y. 2008). In order to effect this purpose, Courts faced with competing interests have required "the party seeking disclosure... to demonstrate a genuine need for the information that outweighs the privacy interest of the student[]." *Id.,* quoting *Rios v. Read,* 73 F.R.D. 589, 599 (E.D.N.Y. 1977). It has been considered to be incumbent upon a Court, in the exercise of its discretion, to "conduct a balancing test in which the privacy rights of the student[] are weighed against the genuine need of the party requesting the information." *Id.* at *5, citing *Blunt v. Lower Merion School District,* 2009 WL 1259100, *2 (E.D.Pa. May 7, 2009), attached; *and citing Zaal v. State,* 326 Md. 54, 602 A.2d 1247, 1256 (Md. 1992). Other Courts have applied a balancing test in similar circumstances. *See, e.g., Nastasia v. New Fairfield School District,* 2006 WL 1599599 (D. Conn. June 19, 2006), 3:04cv925(TPS), attached. Applying a balancing test is consistent with the pertinent legislative history. S. Rep. No. 93-1026, at 187 (1974), reprinted in 1974 U.S.C.C.A.N. 4206, 4251 ("The need to protect students' rights must be balanced against legitimate federal needs for information.").

One Court recently noted that:

> [While FERPA] absolves schools that disclose educational records pursuant to a judicial order... nevertheless, the "privacy violations" that result from *any* disclosure of educational records protected by FERPA are no less objectionable simply because release of the records is obtained pursuant to judicial approval unless, before approval is given, the party seeking disclosure is required to demonstrate a genuine need for the information that outweighs the privacy interests of the students.

*Alig-Mielcarek v. Jackson,* 286 F.R.D. 521, 526 (N.D.Ga. 2012) (emphasis added) (internal quotes omitted).

The balancing test that has been applied is weighted towards protecting privacy. As the Court noted in *Alig-Mielcarek,* "[C]ourts have permitted discovery only when the party requesting the records has met a **'significantly heavier burden'** to show that its interest in

obtaining the record outweighs the significant privacy interest of the students." *Id.* (emphasis added). "To overcome a privacy interest in those records, some relationship must be shown between the charges, the information sought, and the likelihood that relevant information will be obtained." *Zaal v. State,* 602 A.2d 1247, 1261 (Md. 1992). While Courts have permitted FERPA disclosures in some cases alleging discrimination, safeguards regarding the disclosures have been put in place. Overly broad requests have been denied. *Alig-Mielcarek.* at 527. Redaction of all personally identifiable information has been ordered. *Ragusa* supra, 549 F. Supp.2d at 293-94. In *Craig v. Yale University School of Medicine*, 2012 WL 1579484 (D. Conn. May 4, 2012), attached, Judge Margolis permitted limited disclosure regarding comparators, but restricted the scope of plaintiff's request.

In *Nastasia,* supra, the District of Connecticut permitted discovery in the context of a complaint that a teacher engaged in acts of, essentially, sexual abuse, and the public school district had allegedly not responded appropriately. *Nastasia, supra,* 2006 WL 1699599 at *1-2. The Court limited the time frame, however, after "carefully balance[ing] the relevance." *Id.* Another Court limited photocopying of the records and put in place, essentially, a Protective Order. *Davids v. Cedar Falls Community Schools,* 1998 WL 34112767 (N.D.Iowa 1998), attached.

With regard to the records related to the comparator student, defendants urge that two different factors should be considered by the Court here. First, defendants posit that the records plaintiff seeks are likely to identify the student even if his name is redacted. Second is the fact that the student himself objects. As for the student or students that complained about plaintiff's conduct regarding South Park Clinic, plaintiff directly seeks their identity, which ultimately has no bearing on any of the elements of this case. Their identity is protected by FERPA. Any

complaining student is not a "comparator" who allegedly engaged in misconduct similar to

plaintiff's, nor would any such student be a decision-maker with regard to the plaintiff in any

manner. The parties all agree that a complaint came to the School of Medicine and defendants are

willing to provide any and all requested documents having to do with defendants' conduct once

in receipt of a student complaint. No real value is added to this case by giving the name(s) of

any such student(s) to the plaintiff.

As for the alleged "comparator", it is likely the student could be easily identified by plaintiff

with additional information in the form of information that has been subpoenaed and/or requested.

There were approximately 88 students in plaintiff's class in 2013, 39 of them male, making the

alleged comparator one of 39, a relatively small number made smaller by the fact that plaintiff

alleges the student was also Caucasian and of course there were students of various races in

plaintiff's class. Given that plaintiff claims to know what this student looked like, his race and

gender obviously, and what rotation(s) he was in as a medical student, and given the nature of

the records related to this student, it is likely that the plaintiff and/or others could identify what

single student plaintiff claims to be a comparator to herself in terms of her admitted misconduct

even with the student's name redacted from the records plaintiff seeks or omitted during

testimony. Defendants respectfully submit that this sort of information and records, related to a

student's academic career, is the quintessential kind of records and information the Federal

Educational Rights and Privacy Act shields from disclosure.

Secondly, this comparator student has indicated his objection to this information being

provided. The defendants have an obligation to protect educational records from being made

public. The release of such information to plaintiff who claims misconduct on the part of her fellow

student is an invasion of privacy and could tend to embarrass the student, even as the other student's

conduct was not as described by plaintiff.   FERPA "embod[ies] the strong public policy of

protecting the privacy of student records.  In this regard, courts have withheld this information even

when relevant to resolving claims before the court." *Ke v. Drexel,* supra, *5, citing *Blunt,* supra, and

*Naglak v. Pennsylvania State Univ.,* 133 F.R.D. 18, 24 (M.D.Pa. 1990).  This has been the result

even when "a party is being deprived of relevant information." *Ke* at *5.

     In *Ke v. Drexel* and *Naglak,* the District Courts found that the risk of public disclosure of

private information could be remedied by providing the information in statistical or summary form.

*Id.* at *6.  The problem here, however, is that there is only one alleged comparator student, thus

there is no possibility of providing statistical information, and disclosure may certainly tend to

identify the student.  The plaintiff has testified she knows what this student looks like.  Thus,

defendants submit that, balancing the needs of this litigation against the privacy rights of the other

student, disclosure of any information related to this other male student is not appropriate.

     Plaintiff will no doubt argue this information about the comparator is necessary for her case

as her entire case hinges on the argument that she was treated differently than one other Caucasian

student with similar or worse conduct.  However, plaintiff's deposition makes clear that all of her

information regarding this other student comes in the form of alleged hearsay from Dr. Lewis.  See

deposition transcript pp. 173 -76.[7]  Defendants respectfully submit that, if the Court is inclined to

---

[7]     Plaintiff testified as follows in her deposition: Q: So, paragraph 31 [of the complaint]
refers to the Caucasian student, and that's the student whose name you don't know?  A:  Correct.
Q: And that's the one that Dr. Lewis told you about?  A:  Yes....
Q: And in paragraph 33, it says, "During one of the required rotations at approximately the same
time that the plaintiff had submitted the unsigned SCO, the Caucasian student submitted three
SCOs containing the purported signatures from the supervising physician."  Is all of the
information in that paragraph stuff that you're saying that you heard from Dr. Lewis?  A:  Yes.
Q: Okay.  And the same with 34, that he had forged the physicians' signatures.  A:  Yes.
Q: And 35 says, "The lead doctor, acting with due diligence, approached the physician who had
supposedly signed this Caucasian student's SCO's and inquired about the genuineness of the
signatures."  So, who's the lead doctor:  A:  Dr. Lewis.

13

permit any discovery of this FERPA protected information regarding the comparator,  this Court

order that Dr. Lewis be deposed first to see if plaintiff's allegations are sufficiently borne out

without identifying this student prior to going a step further and ordering the release of records

related to this student.  If there is insufficient evidence that this student's conduct was "similar," it

will be unnecessary to produce any of his educational records.  Because the basis of all of plaintiff's

allegations regarding this one other student is alleged hearsay from Dr. Lewis, in the event that

plaintiff has misunderstood or mischaracterized Dr. Lewis's description of the other student's

conduct, it is likely that, ultimately, this Court need not order the release of records protected by

FERPA.  Thus, it makes sense to conduct discovery into this incident in phases.  In *Ke v. Drexel*, the

Court indicated that questions posed in depositions could be put so as to not inquire as to identity,

and stated that other questions would not be answered.  *Ke*, supra at *7.

As for the student(s) that complained about plaintiff's conduct, defendants respectfully

move that should this Court be inclined to order discovery of documents related to the complaint,

any and all names be redacted, and that this Court order that responses in the form of Interrogatories

or deposition testimony not contain any student name.

To the extent this Court orders any discovery whatsoever related to any student(s),

defendants respectfully move for an Order by this Court prohibiting the re-disclosure of any and all

information related to this student by plaintiff, her counsel or any other person, and prohibiting

plaintiff from contacting the other student except through her attorney.  Defendants attach a

proposed Protective Order.  Defendants re-iterate that they oppose all discovery related to this other

---

Q: So, she was the lead doctor in charge of the psychiatric rotation?  A:  Yes....
Q: And who told you that the Caucasian student was permitted to complete his course of studies
and graduate?  A:  Dr. Lewis had stated that she was not … aware that the student had any
repercussions from this and moved forward just fine.  Q:  **Okay.  Other than Dr. Lewis, do you
have any other information about this student?  A:  No.**   Dep. pp. 173-76 (emphasis added).

student, and propose discovery in phases and with a Protective Order only in the alternative.

Should the Court consider that the identity of any student(s) who complained about the plaintiff's

conduct regarding South Park, defendants move that, although that information was not sought by

subpoena, that the defendants be given an opportunity to notify the student(s) and the student(s) be

given an opportunity to note any objection that they may have.

Dated at Hartford, Connecticut this 30th day of April 30, 2015.

DEFENDANTS,
UNIVERSITY OF CONNECTICUT, et al

GEORGE JEPSEN
ATTORNEY GENERAL

By:    */s/ Lynn D. Wittenbrink*
Lynn D. Wittenbrink
Assistant Attorney General
Federal Bar # ct08575
55 Elm Street, P.O. Box 120
Hartford, CT 06141-0120
Tel: (860) 808-5340
Fax: (860) 808-5383
E-mail: Nancy.Brouillet@ct.gov

## CERTIFICATION

I hereby certify that on April 30, 2015, a copy of the foregoing was filed electronically.

Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing

system. Parties may access this filing through the Court's system.

*/s/ Lynn D. Wittenbrink*
Lynn D. Wittenbrink
Commissioner of the Superior Court